UNITED STATES *v.* HIRSCHBACH & SMITH (INC.) (No. 2805)[1]

United States Court of Customs Appeals, April 4, 1927

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter* and *Ralph Folks,* special attorneys,· of counsel), for the United States.
*Curie, Lane & Wallace* for appellee.

[Oral argument January 25, 1927, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of wool yarn. It was assessed for duty by the collector at 36 cents per pound and 40 per centum ad valorem under paragraph 1107 of the Tariff Act of 1922, which reads as follows:

PAR. 1107. Yarn, made wholly or in chief value of wool, valued at not more than 30 cents per pound, 24 cents per pound and 30 per centum ad valorem; valued at more than 30 cents but not more than $1 per pound, 36 cents per pound and 35 per centum ad valorem; valued at more than $1 per pound, 36 cents per pound and 40 per centum ad valorem.

The only question involved is that of the conversion of currency. Section 522 of the Tariff Act of 1922 provides as follows:

SEC. 522. CONVERSION OF CURRENCY.—(a) That section 25 of the act of August 27, 1894, entitled "An act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

(b) For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the

[1] T. D. 42139.

provisions of section 25 of such act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

(c) If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal Reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through the exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

The yarn was invoiced and entered in pounds sterling. It was appraised at the entered value. It appears from the record that the collector converted the foreign currency into American dollars at the rate proclaimed by the Secretary of the Treasury for the quarterly period during which the merchandise was exported. The proclaimed rate was $4.8665. Upon this basis of computation, the yarn was valued at more than $1 per pound.

It was claimed in the protest that the collector should have made the conversion on the basis of the "buying rate of exchange for pounds sterling in the New York market at noon on the date of exportation, or at the exchange value of such foreign money, or the true value thereof, on the date of exportation."

The buying rate of exchange in the New York market at noon on the day of exportation of the merchandise was $4.6623.

If the importer's claim is correct, the yarn was worth less than $1 per pound and was dutiable at only 36 cents per pound and 35 per centum ad valorem.

On the trial below the case was submitted on the record, no evidence being introduced.

In sustaining the protest, the trial court said in part:

The point to be determined here is what rate of duty should be levied, and that is determined by the market value, in this case the purchase price, of the commodity packed ready for shipment at the date of exportation, and we find that that price was less than $1 a pound on the two quantities mentioned above. That fact being determined, the ad valorem rate fixed by law in paragraph 1107 of the act of 1922 should be applied by the collector to the entered and appraised value of the two items in question. The invoice discloses that the appraiser did not advance the value of these two items. He checked the value as correct, as is shown on the summary sheet. The amount of duty should be determined by reducing such entered and appraised value at the proclaimed rate for the pound sterling, $4.8665, the conversion being made at the proclaimed rate, the duty to be assessed being 36 cents a pound and 35 per cent ad valorem, owing to the fact that the purchase price was less than $1 a pound.

The protest is sustained.

We are unable to concur in the conclusion reached by the trial court.

We think that neither the cost of the yarn nor its market value at the time of exportation is involved in the case.

The foreign value of the yarn was declared in the entry in foreign currency. This value was found by the appraiser to be correct. There was no appeal to reappraisement. Accordingly, the collector was required under the law to accept the value thus found to be the dutiable value of the merchandise. There is no claim, as we understand the issues, that the collector used any other than the appraised value in determining the dutiable status of the merchandise. However, it was the duty of the collector, in the classification of the merchandise and in the assessment of duties, to convert the foreign currency of purchase and entry into the currency of the United States; and it was his duty in so doing to conform to the plain mandates of section 522, *supra*. This we think he did.

It is plain that the rate proclaimed by the Secretary of the Treasury for pounds sterling—$4.8665—for the quarter in which the yarn was exported did not vary by "5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation," which was $4.6623. It was, therefore, the duty of the collector to convert the appraised value, which was in pounds sterling, into the currency of the United States by using the proclaimed rate, in order to ascertain the dutiable value in United States currency. This he did. The value thus found was in excess of $1 per pound, and duty was properly assessed under paragraph 1107 at 36 cents per pound and 40 per centum ad valorem.

The judgment is *reversed*.